FILED
2018 Aug-07  AM 10:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KIERSTON SIMPSON,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ]      **CIVIL ACTION NO.** |
| vs. | ]      **2:17-CV-00291-KOB** |
| | ] |
| **KEY LINE SOLUTIONS, INC., and** | ] |
| **GHEORGE CIOBANU,** | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

This matter is before the court on cross motions for partial summary judgment. Plaintiff Simpson sued Defendants Key Line Solutions, Inc. and Gheorge Ciobanu on four counts of negligence, wantonness, negligent entrustment, and negligent hiring and retention. Ms. Simpson moved for partial summary judgment on her negligence claim, and Defendants Key Line and Ciobanu moved for partial summary judgment on Ms. Simpson's remaining claims for wantonness, negligent entrustment, and negligent hiring. (Docs. 17 and 23).

As explained below, the court finds that genuine issues of material fact exist regarding the Defendants' alleged negligence and wantonness. Therefore, the court will DENY the cross motions for summary judgment regarding those two counts (Counts I and II). However, the court will GRANT Defendants' motion as to Plaintiffs' negligent entrustment and negligent hiring and retention claims (Counts III and IV). Accordingly, the case will proceed only on Ms. Simpson's negligence and wantonness claims against both Defendants.

## I. FACTUAL BACKGROUND

This case arises out of a traffic incident that occurred on April 8, 2016, on a section of Interstate 20/59 near Bessemer, Alabama. Plaintiff Simpson was driving her vehicle in the right,

northbound lane, while Defendant Gheorge Ciobanu was driving a tractor-trailer alongside her in the left lane. (Doc. 1-3 at 7). Mr. Ciobanu was driving the tractor-trailer for Defendant Key Line Solutions, for whom he had worked since March 2016. (Doc. 17-5 at 2).

Mr. Ciobanu's journey had begun in Chicago, where a colleague had left a tractor-trailer in a parking lot for Mr. Ciobanu to pick up. (Doc. 20-5 at 29). When Mr. Ciobanu arrived for the truck, he noticed the front bumper was missing two of its supports, and rubber straps appeared to be holding the bumper in place. (Doc. 20-5 at 12, 30). Mr. Ciobanu believed that the bumper was unsafe and expressed his concern to Key Line's owner-operator, Goran Rolevski. (Doc. 20-5 at 14–15). Despite Mr. Ciobanu's request that Mr. Rolevski replace the bumper, Mr. Rolevski persuaded him that the bumper was safe, that it was legal, and that everything would be okay. (*Id.* at 12, 14–15). Mr. Rolevski told Mr. Ciobanu to drive the tractor-trailer and that he would replace the bumper once Mr. Ciobanu returned to Chicago. (*Id.* at 12).

Mr. Ciobanu then drove the tractor-trailer to Alabama without incident. (Doc. 20-5 at 30). After arriving in Alabama, an Alabama State Trooper inspected Mr. Ciobanu's tractor-trailer. Mr. Ciobanu believes it was a Level II inspection, but is unsure. A level II North America Standard inspection includes an inspection of components such as brakes, cargo securement, coupling devices, driveline/driveshaft, exhaust systems, frames, fuel systems, and lighting devices. (Doc. 22 at 41). The trooper issued Mr. Ciobanu a citation for failing to maintain a sufficient amount of windshield washer fluid, but did not cite him for anything regarding the tractor-trailer's front bumper. (Doc. 20-5 at 30).

On April 8, 2016, Mr. Ciobanu was traveling on I- 20/59 in Bessemer, Alabama. As he was driving his tractor-trailer in the left, northbound lane, Ms. Simpson merged onto I-20/59 and began traveling in the right, northbound lane. (Doc. 25-2 at 3). As the two vehicles traveled side-

by-side, Mr. Ciobanu heard a loud noise that sounded like a "pop." (Doc. 20-5 at 25). A portion of his front bumper disconnected from the truck and wedged into the tractor-trailer's front, left tire, making it impossible for Mr. Ciobanu to steer the vehicle to the left. (Doc. 20-5 at 21). Mr. Ciobanu considered the situation an emergency, and knew that he needed to exit the road immediately. Because he could not possibly steer his vehicle to the left, Mr. Ciobanu reasoned that the right shoulder of the interstate was the only location where he could safely pull over.

So, Mr. Ciobanu checked his rearview mirrors, turned on his right turn signal, and began merging into the right, northbound lane of I-20/59. Despite checking his mirrors, Mr. Ciobanu did not see Ms. Simpson's vehicle. (Doc. 25-2 at 3). As Mr. Ciobanu merged into Ms. Simpson's lane, Ms. Simpson attempted to avoid colliding with him by blowing her horn, speeding up to pass Mr. Ciobanu, and moving onto the right shoulder of the interstate. Ms. Simpson's attempt was unsuccessful, and Mr. Ciobanu's tractor-trailer collided with her vehicle. (Doc. 1-3 at 7).

Approximately five minutes after the collision, a police officer arrived and investigated Mr. Ciobanu's truck. (Doc. 25-2 at 27). At the officer's instruction, Mr. Ciobanu drove the tractor-trailer to a nearby truck stop. There, the officer told Mr. Ciobanu to fix the broken bumper, which he did by breaking off part of it. (Doc. 20-5 at 32). Neither party submitted any eyewitness or expert testimony regarding what caused the bumper to become lodged in the truck's tire.

## II. STANDARD OF REVIEW

The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. After the moving party has met

its burden of demonstrating the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial. *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex*, 477 U.S. at 324).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must not weigh the evidence and make credibility determinations because these decisions belong to a jury. *See id.* at 254.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### III. DISCUSSION

#### A. *Summary Judgment Analysis for Ms. Simpson's Negligence Claim*

The question of whether a party's conduct constitutes negligence turns on the unique facts of each case, *Lowe's Home Centers, Inc. v. Laxson*, 655 So. 2d 943, 945 (Ala. 1994), and the trial court ordinarily should not dispose of the question in a peremptory manner. *Brown v. AAA Wood Products, Inc.*, 380 So. 2d 784, 787 (Ala.1980). The presence or absence of negligence is generally a question for a jury to determine, so summary judgment is rarely appropriate in a negligence case. *See Beddingfield v. Central Bank of Alabama, N.A.*, 440 So. 2d 1051, 1053 (Ala. 1983). Further, the existence of proximate cause is usually an issue to be

resolved by a jury, *Davison v. Mobile Infirmary*, 456 So.2d 14, 24 (Ala.1984), as is the question of whether a defendant breached his duty to use reasonable care. *See, e.g., Louis Pizitz Dry Goods Co. v. Harris*, 118 So. 2d 727, 730–31 (1959).

Ms. Simpson urges that she is entitled to summary judgment as to Mr. Ciobanu's liability in this case because Mr. Ciobanu's conduct constitutes negligence *per se*. Her argument relies on an Alabama statute and a Federal Regulation. The court will address both and apply them to the facts in the record.

### *i. Negligence as a Matter of Law Pursuant to Ala. Code § 32-5A-133*

Ms. Simpson's brief in support of her motion for summary judgment first cites Alabama Code § 32-5A-133. That statute provides: "No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety . . . ." Ala. Code § 32-5A-133(a). Thus, Ms. Simpson's argument is simple. She urges that Mr. Ciobanu violated § 32-5A-133(a) and is negligent as a matter of law because Mr. Ciobanu collided with Ms. Simpson's car while turning into her lane.

In *Consolidated Freightways, Inc. v. Pacheco-Rivera*, the Supreme Court of Alabama held that "where the applicable Rule of the Road requires a judgment to be made on the part of the driver, the reasonable man standard applies and a violation of the statute is not negligence per se." 524 So. 2d 346, 350 (Ala. 1988). The court's holding specifically contemplated § 32-5A-133(a)'s language (as it then existed in Ala. Code § 32-5A-88(1)).

Here, § 32-5A-133(a) prohibited Mr. Ciobanu from changing lanes on I-20/59 until he could do so with "reasonable" safety. But for that one word, "reasonable," the evidence before the court would likely suffice to show that Mr. Ciobanu's lane change constituted negligence per se. After all, the parties do not dispute that Mr. Ciobanu turned his vehicle and collided with Ms.

5

Simpson, who was innocently traveling next to him. Because the turn caused an accident, it certainly could not be considered "safe."

However, in light of the Alabama court's decision in *Consolidated Freightways, Inc.*, that word, "reasonable," is quite significant. It required that Mr. Ciobanu assess the situation and make a judgment regarding the safety of pulling his tractor-trailer over to the side of the interstate. Thus, the question is whether Mr. Ciobanu's decision to merge when and how he did was reasonable under the "unique facts" of this particular case. *See Lowe's Home Centers, Inc.*, 655 So. 2d at 945.

Mr. Ciobanu testified that when the front bumper of his tractor-trailer began pushing the front left tire, he believed that he was in an emergency situation and needed to pull over immediately. These facts are unique to this case, and set the context in which the reasonableness of Mr. Ciobanu's lane change must be judged. That judgment is for the jury. Therefore, the court finds that Plaintiff's motion for summary judgment on this ground is due to be denied.

### *ii. Negligence as a Matter of Law Pursuant to 49 CFR § 393.203(e)*

Ms. Simpson also relies on Federal Regulation § 393.203 to argue that Defendants are liable for negligence as a matter of law. That regulation provides, in part, that the front bumper of a federally regulated motor carrier "must not be missing, loosely attached, or protruding beyond the confines of the vehicle so as to create a hazard." 49 CFR § 393.203(e). Unlike the Alabama statute, § 393.203(e) does not require any judgment on the driver's part.

However, Ms. Simpson did not present evidence that Mr. Ciobanu's bumper violated this statute in any way. Yes, the tractor-trailer's bumper *came* loose or unattached at some point, but neither party submitted any evidence of what actually caused the bumper to fail. Therefore, the

bumper could have failed for any number of reasons, many of which have nothing to do with the bumper's missing supports or the rubber straps.

The court cannot assume that the bumper was missing, loosely attached, or protruding merely because two supports were missing and it had rubber straps around it. Nor can the court assume that any of those factors caused Mr. Ciobanu's collision with Ms. Simpson. While a jury, armed with more evidence, could reasonably determine that those straps were holding the bumper in place, that the straps failed, that their failure was foreseeable, and that their failure caused the accident, Ms. Simpson presented no evidence to that effect. She provided no evidence that the bumper was loose before Mr. Ciobanu left Chicago, no evidence that the straps were actually meant to secure the bumper, and no evidence that the straps' failure caused the bumper to fall into the tire. In the absence of such *evidence*, the court cannot find that the Defendants violated § 393.203(e) or that they are liable for negligence as a matter of law.

As noted above, a jury must determine whether Mr. Ciobanu acted negligently when he merged into Ms. Simpson's lane. A jury must also determine whether the tractor-trailer had a loosely attached bumper that proximately caused Mr. Ciobanu's accident with Ms. Simpson. Therefore, her motion for summary judgment is due to be denied.

### B. Summary Judgment Analysis for Ms. Simpson's Wantonness, Negligent Hiring, and Negligent Entrustment Claims

#### i. Wantonness

Count II of Ms. Simpson's Complaint alleges that Defendants are liable for wanton behavior because they "deliberately and recklessly operated a defective truck that posed a foreseeable threat to public safety." (Doc. 1-3 at 8). More specifically, Ms. Simpson points to Defendants' choice to operate the tractor-trailer on the interstate despite knowing its bumper lacked the appropriate underside supports.

The Alabama Legislature defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). For a plaintiff to succeed on a wantonness claim, she "must show that, with reckless indifference to the consequences, the [defendant] consciously and intentionally did some wrongful act or omitted some known duty with knowledge of the existing conditions, and that this act or omission produced the injury complained of." *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988).

Defendants did not dispute that they chose to place Mr. Ciobanu's tractor-trailer on the interstate despite knowing its underside bumper supports were missing. Nor did Defendants offer any evidence disputing Ms. Simpson's allegation that the truck's bumper failed because the supports were missing. Finally, Defendants provided no evidence disputing that Mr. Ciobanu, in response to the failed bumper, crashed into Ms. Simpson's car while trying to stop the tractor-trailer on the right shoulder of the interstate.

Viewing the evidence in the light most favorable to Ms. Simpson, the non-moving party, the court finds that a jury could reasonably determine that Defendants engaged in wanton conduct when they chose to ignore the bumper's potential to cause injury. Therefore, the court will deny Defendants' motion for summary judgment as to Ms. Simpson's wantonness claim.

### ii. Negligent Entrustment

Count III of Ms. Simpson's Complaint seeks to hold Defendant Key Line Solutions, Inc. liable for negligent entrustment. (Doc. 1-3 at 8). To succeed, Ms. Simpson must show "(1) an entrustment of the vehicle; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) negligent or wanton use of the entrusted vehicle which proximately caused the plaintiff's damages; and (5) damages." *Big 3 Motors, Inc. v. Hawie*, 895 So. 2d 349, 351 (Ala. Civ. App. 2004) (quoting *Jackson v. Searcy,* 628 So. 2d 887, 889 (Ala.Civ.App.1993)).

8

Ms. Simpson alleges in her Complaint that Key Line should not have entrusted its tractor-trailer to Mr. Ciobanu because Key Line "knew, or had reason to know, that [Mr. Ciobanu] because of youth, inexperience, and/or prior actions was likely to drive his truck in a negligent and reckless manner." (Doc. 1-3 at 2). More specifically, Ms. Simpson argues that Mr. Ciobanu's "lack of knowledge about the regulations governing the operations of commercial motor vehicles is what made him incompetent." (Doc. 26 at 24). To support this accusation, Ms. Simpson provides that Mr. Ciobanu is from Romania; was 22 years old and spoke very poor English at the time of the accident; had obtained his commercial driver's license seven months before the accident; and had only been driving flat-bed trucks six months before the accident.

A plaintiff alleging negligent entrustment may establish a driver's incompetence by showing that he "was unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics, including general incompetence or habitual negligence." *Edwards v. Valentine*, 926 So. 2d 315, 322 (Ala. 2005) (internal quotations omitted). In *Edwards*, the Alabama Supreme Court suggested that the plaintiff should provide evidence that the driver has a history of negligent or reckless driving, traffic accidents, or driving while under the influence. *Id.*

Mr. Ciobanu was licensed to operate the tractor-trailer that he was driving on the date of the accident. Ms. Simpson provided no evidence that he was generally incompetent or that he had a history of negligent or reckless driving. Aside from allegations about his nationality and his grasp of English, Ms. Simpson merely provided that Mr. Ciobanu was 22 years old and relatively new at driving tractor-trailers. But neither youth nor limited experience renders one incompetent. Were that so, every new driver's ability to obtain driving experience would be

9

conditioned on someone's willingness to negligently entrust them with a vehicle. No new drivers would then have the opportunity to drive. Obviously, that argument is unrealistic.

The court finds that Ms. Simpson failed to produce any evidence on which a juror could reasonably determine that Key Line negligently entrusted Mr. Ciobanu with the tractor-trailer involved in this case. Consequently, Ms. Simpson's negligent entrustment claim against Key Line fails as a matter of law, and Key Line is entitled to summary judgment as to that claim.

### ii. *Negligent Hiring and Retention*

Count IV of Ms. Simpson's Complaint alleges that Defendant Key Line was negligent in its hiring and retention of Mr. Ciobanu because it "knew, or should have known, that [Mr. Ciobanu] was not competent or fit for the duties required of him as an employee." (Doc. 1-3 at 9). To support this claim, Ms. Simpson argues that Key Line hired Mr. Ciobanu "solely on the recommendation of the owner-operator; and knew he had no training." (Doc. 26 at 25).

As with her negligent entrustment claim, Ms. Simpson must show that Mr. Ciobanu was an incompetent driver to succeed on her negligent hiring or retention claim. *See Johnson v. Brunswick Riverview Club, Inc.,* 39 So. 3d 132, 140 (Ala. 2009) ("a plaintiff pursuing a claim of negligent hiring, training, and/or supervision . . . must establish that the [employee's] incompetency was the proximate cause of the alleged injury."). But, as previously noted, Ms. Simpson provided no evidence of Mr. Ciobanu's incompetence. Even if Mr. Ciobanu had never driven a tractor-trailer before Key Line hired him, Ms. Simpson acknowledged that Key Line trained Mr. Ciobanu, and that Mr. Ciobanu was holding a valid commercial driver's license at the time of the accident.

Given the absence of any evidence suggesting that Mr. Ciobanu was an incompetent driver, no juror could reasonably find that Key Line negligently hired or retained Mr. Ciobanu.

Therefore, Key Line is entitled to summary judgment regarding Ms. Simpson's negligent hiring and retention claim.

IV. **CONCLUSION**

For the reasons explained above, the court finds that genuine issues of material fact exist regarding Ms. Simpson's negligence claim against Defendants Ciobanu and Key Line. Therefore, the court will DENY her motion for partial summary judgment on that claim. (Doc. 17).

The court will GRANT in PART and DENY in PART Defendants' motion for partial summary judgment. (Doc. 23). The court will GRANT the motion and enter summary judgment in Defendants' favor as to Ms. Simpson's claims for negligent entrustment and negligent hiring and retention (Counts III and IV). The court will DENY the motion as to Ms. Simpsons' wantonness claims.

The court will enter a separate Order consistent with this Memorandum Opinion. The case will proceed on Ms. Simpson's negligence and wantonness claims (Counts I and II) against both Defendants.

**DONE** this 7th day of August, 2018.

*/s/ Karon O. Bowdre*
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE